THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARVINDER SINGH, *et al.*,

    Plaintiffs,

    v.

SORAYA MOTOR CO., *et al.*,

    Defendants.

CASE NO. C17-0287-JCC

ORDER

This matter comes before the Court on Defendant American Honda Finance Corporation's ("American Honda") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 52) and motion to strike contained in its reply brief (Dkt. No. 78).[1] The Court converts American Honda's motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d), because both parties have presented to the Court matters outside the pleadings. *See* Fed R. Civ. P. 12(d); (*see generally* Dkt. Nos. 52, 64, 64-1.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS American Honda's motion for summary judgment, and GRANTS in part and DENIES in part its motion to strike for the reasons explained herein.

---

[1] This order does not address the motion for summary judgment brought by the other Defendants in this case (Dkt. No. 53). That motion is addressed in a separate order.

## I.     BACKGROUND

In February 2016, Plaintiff Harvinder Singh ("Singh") bought a new Honda Accord from Defendant Hinshaw's Honda. (Dkt. No. 62 at 1.) The car had a sticker on the window ("Dealer's Addendum") that listed three items: "3M," "Pro Pak," and "New Car Detail & Dealer Prep" ("Dealer Prep") (collectively "Add-ons"). (Dkt. No. 74-1 at 75.) The sticker listed these Add-ons beneath the heading "DEALER-ADDED EQUIPMENT AND SERVICES." (*Id*.) Each Add-on had a price associated with it and were included in the car's total price listed as $30,632.00. (*Id*.)

Singh did not know what the Add-ons listed on the Dealer's Addendum were. (Dkt. No. 62 at 1.) But Singh thought the Add-ons would be included as part of the price of the car because they were listed on the Dealer's Addendum. (Dkt. No. 62 at 2–4.) When Singh completed sales paperwork for the car, the Dealer's Addendum was not included with the paperwork. (*Id*. at 3.) Singh negotiated with dealership employees over the final sale price of the car but did not separately negotiate the price of the Add-ons. (*Id*. at 4.) The final negotiated base price, before taxes and title, was $27,356.79. (Dkt. No. 74-1 at 47.)

As part of the sale, Singh signed a Retail Installment Sale Contract ("RISC"). (Dkt. No. 74-1 at 58–60.) The RISC is a three page document that lists the total vehicle price and applicable financing information. (Dkt. No. 74-1 at 58–60.) Individual prices for the 3M, Pro Pak, and Dealer Prep listed on the Dealer Addendum were not included in the RISC. (*Id*.) Singh obtained financing from American Honda, and signed the RISC prior to purchasing the car. (*Id*. at 60.) The RISC was sent by Hinshaw's Honda to American Honda. (Dkt. Nos. 74-3 at 9, 80 at 4–6.) No American Honda employees were present during the sale of Singh's car. (Dkt. Nos. 74-2 at 2, 80 at 2.)

Singh styles his lawsuit as a putative class action, alleging that Hinshaw's Honda and other related car dealerships fail to disclose the price of, and in some instances fail to furnish, Add-ons during the sale and lease of new cars. (*See generally* Dkt. No. 42.) Singh asserts that if he had known about the Add-ons, he could have declined to pay for them or negotiated a lower

base price. (Dkt. No. 62 at 3–4.) American Honda allegedly profits from these non-disclosures by receiving larger interest payments on financing. (Dkt. No. 74 at 18.) Singh alleges American Honda breached its contract, violated its duty of fair dealing, negligently supervised employees, and violated the Washington Consumer Protection Act ("CPA"). (*Id*. at 34–41.)

## II. DISCUSSION

### A. The Rule 12(b)(6) Motion to Dismiss Standard

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court may consider the pleadings, documents attached to the pleadings, documents incorporated by reference in the pleadings, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). However, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

American Honda initially filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 52.) As part of its motion to dismiss, American Honda included a copy of the RISC signed by Singh at the time he purchased his car. (Dkt. No. 52 at 13–16.) The RISC was not attached to the amended complaint. (*See generally* Dkt. No. 42.) In his response, Singh objected to the inclusion of the RISC with the motion to dismiss. (Dkt. No. 64 at 8.) Singh also included with his response 91 pages of declarations and exhibits that he cites throughout his response to American Honda's motion to dismiss. (Dkt. Nos. 64 at 3–9, 64-1.) The attachments to Singh's response were not included with the amended complaint. (*See generally* Dkt. No. 42.)

Pursuant to Rule 12(d), the Court deferred consideration of the motion to allow Singh a reasonable opportunity to present all material that would be pertinent to American Honda's motion. Fed. R. Civ. P. 12(d); (Dkt. No. 68 at 2.) Singh was allowed to file an updated response and American Honda was allowed to file an updated reply. (*Id*.)

In his second response to American Honda's motion (Dkt. No. 74), Singh objected to "a lack of any opportunity for discovery." (*Id*. at 3–4.) Singh stated that he was able "to obtain minimal informal and incomplete discovery from AHFC [American Honda], i.e., answers to a limited number of requests for admission." (*Id*. at 4.) Singh is essentially asking the Court to further defer consideration of American Honda's motion for summary judgment to allow for more discovery. *See* Fed. R. Civ. P. 56(d); (Dkt. No. 74 at 14.)

The Court does not find a basis to defer consideration any further than it already has. When parties submit materials outside of the pleadings they are on notice that "[t]he judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment." *San Pedro Hotel Co. v. City of L.A.*, 159 F.3d 470, 477 (9th Cir. 1998). By including matters outside of the pleadings, both Singh and American Honda were placed on notice that the Court, under the Federal Rules, could convert the motion to dismiss to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

Furthermore, Singh's argument that he has not been allowed to conduct discovery to oppose American Honda's motion is simply not supported by the record. First, Singh has been propounding discovery on American Honda and the Dealership Defendants since July 21, 2017. (Dkt. No. 79 at 2.) To be sure, Singh attaches to his response dozens of documents that he obtained through discovery and that directly address the issues American Honda raises in its motion to dismiss. (*See generally* Dkt. No. 74-1.)[2] American Honda's motion does not rely on any evidence that has not been provided to Singh. (*See generally* Dkt. No. 78.)

While Singh asserts that American Honda has not fully responded to its discovery requests, he does not provide by affidavit or declaration any "specified reasons, [he] cannot present facts essential to justify [his] opposition . . . ." Fed. R. Civ. P. 56(d). Singh simply states

---

[2] It is true that Singh received much of this discovery from Dealership Defendants and not American Honda. (Dkt. No. 74-3 at 9.) However, the pertinent question is whether Singh has the materials needed to respond to American Honda's motion, not how the documents were obtained. *See* Fed. R. Civ. P. Rule 12(d).

that "[a]side from the RISC, AHFC has not produced other relevant documents." (Dkt. No. 74 at 13.) He fails to explain how such documents would alter his ability to address American Honda's motion. Singh also suggests that he needs an opportunity to depose AHFC employees who handled his contract paperwork, but does not specify how such testimony would provide essential facts needed to justify his opposition. (*Id*.)

Finally, the Court already delayed consideration of this motion for an additional month to allow Singh a reasonable opportunity to address the arguments put forward in American Honda's motion to dismiss. (Dkt. No. 68 at 2.) The Court, therefore, finds it appropriate to convert American Honda's motion to dismiss (Dkt. No. 52) to a motion for summary judgment, and to rule on the motion for summary judgment at this time.

**B.     The Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

District courts have discretion to rule on motions for summary judgment prior to

addressing the issue of class certification. *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984). The requirement of Federal Rule of Civil Procedure 23(c) that class certification be made "as soon as practicable" is not absolute, and "it is reasonable to consider a Rule 56 motion first when early resolution of a motion for summary judgment seems likely to protect both parties and the court from needless and costly future litigation." *Id*. (citation omitted.) A defendant who moves for summary judgment prior to class certification accepts the risk that a favorable ruling would not preclude the claims of absent class members. *Id*.

In this case, the Court finds that it is appropriate to consider American Honda's motion for summary judgment prior to ruling on class certification. First, by bringing a motion on the merits, American Honda assumes the risk that a favorable ruling would only work against Singh's claims and not bind other potential class members. American Honda has not objected to the Court converting its motion to dismiss into a motion for summary judgment, nor has Singh objected to the Court's consideration of the motion prior to class certification. Second, the Court believes that a ruling on the merits of Singh's claims can be made by considering the existing discovery, and in doing so avoid substantial costs that would result from class certification.

### C.     **American Honda's Motion to Strike**

In its reply, American Honda asks the Court to strike several sections from Singh's response brief. (Dkt. No. 78 at 12–14.) First, American Honda asks the Court to strike the footnotes contained in Singh's response as well as pages that exceed the page limit. (*Id*. at 12.) Singh was directed that his response brief be no longer than 24 pages. (Dkt. No. 68 at 2.) That page limitation is set out in Local Civil Rule 7(e)(3). Since Singh's brief contained 27 pages of argument, the Court STRIKES pages 25–27 from Singh's response brief (Dkt. No. 74).

The Court is not striking the footnotes in Singh's motion. Although the Local Civil Rules allow the Court to refuse to consider text, including footnotes, which is not included in the page limits, there is no easy or equitable way to strike footnotes from Singh's brief. While the Court understands American Honda's frustrations with Singh's use of excessive footnotes, it does not

believe Singh's tactic has strengthened the merits of his case.

Next, American Honda asks the Court to strike arguments that were made in declarations submitted by Singh because they effectively circumvent the page limits. (Dkt. No. 78 at 12–14.) Declarations should not be used as a vehicle for legal argument. *See King Cty. v. Rasmussen*, 299 F.3d 1077, 1082 (9th Cir. 2002) (citing to Federal Rule of Civil Procedure 56(c)). The Court will not consider any legal arguments made in the declaration of Singh's counsel. (*See, e.g.*, Dkt. No. 64-1 at 2–18.) The Court therefore STRIKES pages 2–18 from Docket Number 64-1.

Finally, American Honda asks the Court to strike dozens of lines of testimony from the declarations as well as exhibits submitted with Singh's response based on various evidentiary grounds. (Dkt. No. 78 at 13.) On summary judgment, "a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). While American Honda's citations to the record are specific, its corresponding evidentiary objections are far too general. (Dkt. No. 78 at 13.) The Court will not strike testimony or evidence unless it is absolutely clear from the record that it could not be presented in a form that would be admissible at trial.

### D. Singh's Claims Against American Honda

Plaintiff alleges four causes of action against American Honda: (1) Breach of contract; (2) Violation of the duty of good faith and fair dealing; (3) Negligent Supervision; (4) Violation of the CPA. (Dkt. No. 42, at 34-41).[3]

#### 1. Breach of Contract

Under Washington law, a breach of contract claim requires: "(1) a contract that imposed a duty, (2) breach of that duty, and (3) an economic loss as a result of that duty." *Muniz v. Microsoft Corp.*, No. C10-0717-JCC, slip op. at 3 (W.D. Wash. Oct. 29, 2010) (citing *Myers v. State*, 218 P.3d 241, 243 (Wash. Ct. App. 2009)). To make out a claim, the plaintiff must be able to point to a specific provision of the contract that was breached. *Id.* (citing *Elliot Bay Seafoods,*

---

[3] Singh withdrew his claim under the Federal Truth In Lending Act. (Dkt. No. 74 at 24.)

*Inc. v. Port of Seattle*, 98 P.3d 491, 494 (Wash. Ct. App. 2004)).

American Honda primarily asserts that Singh cannot "identify a term in a contract that AHFC purportedly breached or any damages traceable to a purported breach by AHFC." (Dkt. No. 78 at 5.) American Honda argues that the only contractual obligations between it and Singh were contained in the RISC and there is no evidence that American breached any of its obligations under that contract. (*Id*. at 6.)

Singh signed the RISC prior to purchasing his car. (Dkt. No. 80 at 5–6.) Under the RISC's terms, the contract was assigned by Hinshaw's Honda to American Honda. (*Id*. at 6.) American Honda stated in a request for admission that it did not receive any of the other sales documents signed by Singh and Hinshaw's Honda confirmed that it did not transmit those documents to American Honda. (Dkt. Nos. 74 at 25, 74-3 at 9.) Singh states that "the contractual obligations are not contained in any one document (e.g. RISC) but are also present in the Sales Contract and its reverse page . . . and the Vehicle Purchase Order," but provides no evidence to contradict the Defendants' assertions that these documents were never sent nor assigned to American Honda. (Dkt. No. 74 at 14.) The evidence is undisputed, then, that the only contractual obligations between Singh and American Honda were contained in the RISC.

The RISC contains the financing terms for the loan provided to Singh to purchase the car. (Dkt. No. 80 at 5–6.) The RISC does not include terms regarding dealership Add-ons or prices related to such accessories. (*Id*.) The RISC includes an integration clause, which states "This contract contains the entire agreement between you and us related to this contract." (Dkt. No. 80 at 5.) Singh does not allege that American Honda failed to provide financing under the RISC or violated any of its express terms. (*See* Dkt. Nos. 42 at 34, 74 at 14–16.)

Instead, Singh states that American Honda "breached its contractual obligations to provide financing only for legitimate amounts owed, to disclose the amounts financed, and to finance only amounts used to pay for products that Singh actually received." (Dkt. No. 74 at 14.) None of these generalized claims of breach corresponds to a provision in the RISC. (*See*

*generally* Dkt. No. 80 at 5–6.) There is no provision in the RISC about providing financing for only "legitimate amounts," the RISC *did* disclose the total amount financed by American Honda, and Singh received all of the products, *i.e.* the 2016 Honda Accord, that are listed in the RISC. (*Id*.) Therefore, Singh has not provided evidence to create a genuine issue of material fact about whether American Honda breached a specific contractual obligation under the RISC.

For the first time in his response to summary judgment, Singh offers a new theory for how American Honda breached its contractual obligations. (*See* Dkt. No. 74 at 14–16.) Singh asserts that American Honda and Hinshaw's Honda were in a joint venture partnership and as such, American Honda, was liable for the breaches of contract committed by Hinshaw's Honda as its agent. (*Id*.) Singh did not plead the joint venture allegations in his second amended complaint. (*See generally* Dkt. No. 42.) Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Nowhere in his complaint does Singh allege that American Honda and the Dealership Defendants operate as a joint venture partnership, or that American Honda is liable for contractual breaches by the Dealership Defendants. (*Id*.) At the summary judgment stage, Singh cannot create a new theory of liability entirely bereft of factual allegations in the complaint. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006).

Singh additionally argues that American Honda committed a per se breach of contract by not complying with the terms of The Auto Dealer's Practices Act, Revised Code of Washington 46.70.130 ("ADPA"). That law provides:

> (1) Before the execution of a contract or chattel mortgage or the consummation of the sale or lease of any vehicle, the seller must furnish the buyer or lessee an itemization in writing signed by the seller separately disclosing to the buyer or lessee the finance charge, insurance costs, taxes, and other charges which are paid or to be paid by the buyer or lessee.

Wash. Rev. Code § 46.70.130(1). Singh argues that the failure of American Honda to include an itemization of 3M, Pro Pak, and Dealer Prep in the RISC represented a violation of ADPA. (Dkt. No. 74 at 16.) By its plain terms, however, that statute only applies to *sellers*. Wash. Rev. Code

§ 46.70.130(1). American Honda, as a creditor and assignee, is not subject to its requirements. (Dkt. No. 80 at 5–6.) Therefore, Singh cannot show a per se breach by American Honda.

For the above reasons, the Court finds that Singh has not provided sufficient facts to show that American Honda breached a contractual obligation owed to Singh. The Court GRANTS summary judgment for American Honda on Singh's breach of contract claim.

### 2. Duty of Good Faith and Fair Dealing

In every contract there is an implied duty of good faith and fair dealing that requires parties to cooperate with one another to realize the benefits of full performance. *See Rekhter v. Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014). This duty only exists in regard to the contractual terms agreed to by the parties. *Johnson v. Yousoofian*, 930 P.2d 921, 925 (Wash. Ct. App. 1996) ("The implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations. If there is no contractual duty, there is nothing that must be performed in good faith.") (citation omitted).

American Honda's argument regarding Singh's duty of good faith and fair dealing claim is the same as its argument regarding the breach of contract claim—Singh cannot point to a specific contractual obligation under the RISC that American Honda failed to perform in good faith. (Dkt. Nos. 52 at 6, 78 at 7.) The Court agrees. Singh states that American Honda breached "its obligation to finance only legitimate charges for furnished products." (Dkt. No. 74 at 17.) Singh offers no provision in the RISC that requires such an obligation from American Honda. (*Id.*) Singh further states that the failure of American Honda to include an itemization of 3M, Pro Pak, and Dealer Prep in the RISC represented a violation of the ADPA and by extension a violation of duty of good faith and fair dealing. (*Id.*) As previously noted, American Honda, as a creditor, was not bound by the ADPA's requirements. *See* Wash. Rev. Code § 46.70.130(1).

For these reasons, Singh has not provided sufficient evidence that American Honda breached its duty of good faith and fair dealing. Therefore, the Court GRANTS American Honda's motion for summary judgment on Singh's duty of good faith and fair dealing claim.

1               3. <u>Negligent Supervision</u>

2          The tort of negligent supervision places a limited duty on employers to control their
3 employees for the protection of third parties. *See Niece v. Elmview Group Home*, 929 P.2d 420,
4 427 (Wash. 1997). A claim of negligent supervision requires that: (1) An employee acted outside
5 the scope of employment; (2) the employee posed a risk of harm; (3) the employer knew or
6 should have known that the employee posed a risk to others; and (4) the employer's failure to
7 supervise was a proximate cause of loss. *Garrison v. Sagepoint Fin., Inc.*, 345 P.3d 792, 801,
8 *review denied*, 352 P.3d 188 (Wash. Ct. App. 2015) (citation omitted).

9          American Honda argues that Singh has not sufficiently alleged or provided evidence that
10 Dealership employees, as agents of American Honda, acted outside the scope of their
11 employment when selling Singh his car. (Dkt. No. 52 at 6.)[4] American Honda points out that
12 Singh alleges "[t]he highest level of management and ownership actually formulated and
13 implemented the scam as a regular part of the business practices of Defendants." (*Id.*) (citing
14 Amended Complaint, Dkt. No. 42 at 19.)

15          Under Washington law, "an employee's conduct will be outside the scope of employment
16 if it "is different in kind from that authorized, far beyond the authorized time or space limits, or
17 too little actuated by a purpose to serve the master." *Robel v. Roundup Corp.*, 59 P.3d 611, 621
18 (Wash. 2002) (citing Restatement (Second) of Agency § 228(2) (1958)). Singh asserts that the
19 Hinshaw's Honda employees acted outside the scope of their employment by "refusing to use the
20 2016 ACCESSORIES forms; refusing to disclose add-ons in the RISC and Sales Contract when
21 such disclosure is required even if the add-ons were free." (Dkt. No. 74 at 22.)

22          Singh's assertion that the Dealership employees acted outside the scope of their
23 employment is not supported by the undisputed evidence. According to the sales consultant who
24 sold Singh his car "nobody at Hinshaw's Honda went through every item on the MSRP sticker

---

[4] American Honda also argues that Singh has failed to provide evidence that the Dealership employees acted as its agents. (Dkt. No. 78 at 8.)

and Dealer's Addendum with customers." (*Id.*) The general manager of Hinshaw's Honda testified that it was the Dealership's practice not to list accessories on the sales contract. (Dkt. No. 74-1 at 102–104.) In other words, the acts Singh complains of were the Dealership's explicit policies and practices. Thus, Singh has not created a genuine dispute of material fact about whether the Dealership employees acted outside the scope of their employment.

For the first time in his response, Singh argues that "AHFC is liable under respondeat superior for all counts." (*Id.*) (Citing *Niece* 929 P.2d at 426). Respondeat superior is a cause of action distinct from negligent supervision, which makes an employer liable for the torts of her employees committed within the scope of their employment. *See Niece* 929 P.2d at 425–26. Singh did not plead respondeat superior as a claim in either his complaint or amended complaint. (*See generally* Dkt. Nos. 1-2, 42.) Nor has he articulated specific facts in his opposition to summary judgment that sufficiently demonstrate he has met his burden to prove such a claim. (Dkt. No. 74 at 22–24.) Therefore, the Court will not consider the theory of respondeat superior as part of this summary judgment motion. Fed. R. Civ. P. 8(a)(2); *Pickern* 457 F.3d at 964.

For these reasons, the Court GRANTS American Honda's motion for summary judgment on Singh's negligent supervision claim.

### 4. Consumer Protection Act

To prove a violation of the CPA, a plaintiff must allege: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) which impacts the public interest; and (4) an injury to business or property; (5) which was caused by the deceptive act or practice. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986).

American Honda argues that summary judgment is appropriate because, as an assignee of the contract initiated by Hinshaw's Honda, it cannot be held liable for the deceptive acts or practices allegedly committed by the Dealership in initiating Singh's loan. (Dkt. No. 78 at 9–10.) Singh asserts that the "financing of add-ons that were never furnished or properly disclosed is an unfair or deceptive act or practice." (Dkt. No. 74 at 18.) American Honda, however, did not play

any role in the furnishing or disclosure of vehicle Add-ons at the time of sale, as none of its employees were present at the Dealership. (Dkt. Nos. 74-2 at 2, 80 at 2.) American Honda never saw the stickers that were on the car sold to Singh and it received the RISC after the sale, which did not contain any reference to the Add-ons. (Dkt. No. 80 at 5–6.) Singh has not produced evidence that demonstrates American Honda was directly or indirectly involved in any of the deceptive practices that he alleges Hinshaw's Honda employed. Assignees are typically not liable for CPA violations that were committed by the loan originator, where the assignee had no direct involvement with the alleged violation. *See, e.g.*, *Olander v. Recontrust Corp.*, No. C11-177-MJP, slip opinion at 6 (W.D. Wash. Mar. 7, 2011); *White v. Homefield Fin., Inc.*, 545 F. Supp. 2d 1159, 1170 (W.D. Wash. 2008)).

Like his breach of contract theory, Singh argues that American Honda and Hinshaw's Honda formed a joint venture partnership that makes the former liable for the deceptive practices of the latter. (Dkt. No. 74 at 18.) As the Court has already explained, *see supra* Part II.D.1, Singh's joint venture theory was never plead in his amended complaint and will not be considered on summary judgment. Singh has not produced sufficient evidence to support his CPA claim, and the Court GRANTS summary judgment on this claim to American Honda.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 52) is GRANTED. The Defendant's motion to strike (Dkt. No. 78) is GRANTED in part and DENIED in part. The Clerk is DIRECTED to STRIKE pages 25–27 in Docket Number 74 and pages 2–18 in Docket Number 64-1.

DATED this 26th day of October, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE